Eastern Diversified Metals Corporation *v.* Commonwealth.

606

Argued September 8, 1972, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*William P. Thorn,* with him *Wolf, Block, Schorr and Solis-Cohen,* for appellant.

*Edward T. Baker,* Deputy Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, November 21, 1972:

Appellant files this appeal from the order of the Board of Finance and Revenue denying the prayer of its petition for a refund. The narrow question involved on the merits is whether the appellant is entitled to the Franchise Tax exemption for manufacturing or processing when its activity is reclaiming metal from scrap wire by a process of separation. However, before getting to the question on the merits, the Commonwealth has raised the question of the scope of appellate review being limited to questions of jurisdiction, regularity of proceedings, excess in exercise of powers, and constitutional issues.

Prior to the adoption of Article V, Section 9, of the Constitution of 1968, it seems clear that the scope of review would have been so limited, usually called narrow certiorari. *See Graybill and Bushong, Inc. v. Board of Finance and Revenue,* 414 Pa. 70, 198 A. 2d 316 (1964). However, the adoption of this provision in the Constitution, as implemented by the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, 17 P.S. §211.101 *et seq.,* changed this so that there is a right to appeal, not a right to narrow certiorari, from the action of the Board of Finance and Revenue. Although we have not had occasion to pass on this very point, a similar case was decided by this Court in *Millersville Annexation Case,* 2 Pa. Commonwealth Ct. 587, 279 A. 2d 349 (1971). There it was an appeal from the validity of an ordinance which had previously been similarly limited in scope and we held that the new Constitution, together with the Appellate Court Jurisdiction Act of 1970, gave the right of a broad scope of review. We were affirmed by the Supreme Court of Pennsylvania. *See Millersville Annexation Case,* 447 Pa. 310, 290 A. 2d 102 (1972). The reasoning of those opinions applies with equal force here and, accordingly, we hold that an appeal to this Court from an order of the Board of Finance and Revenue is entitled to a broad scope of review in considering the propriety of the Board's decision.[1]

Having decided that the entire matter is before us for review on the merits, we conclude that the Board of Finance and Revenue was correct in refusing the

---

[1] Although certainly not controlling, it is reassuring to note that on the floor of the Constitutional Convention, one of the proponents of the provision to grant the right of broad review on appeal, rather than narrow review on certiorari, specifically refers to the narrow review on certiorari from the Board of Finance and Revenue as being one of the ills to be cured by the amendment. *See Journal of the Constitutional Convention,* page 959 *et seq.*

prayer of the Petition for Refund. In the Specification of Objections filed with the appeal, the appellant asserts exemption under either or both exemptions for "processing" as defined by the Act or "manufacturing" as defined by the Courts. The appeal was filed on April 29, 1971.

On July 12, 1972, this Court decided *Morrisville Scrap Processing Company, Inc. Tax Appeal*, 6 Pa. Commonwealth Ct. 121 (1972) wherein this Court reviewed the history of the manufacturing exemption and concluded that the separation of scrap did not constitute manufacturing. In the brief and on argument, appellant did not press its claim under this exemption, presumably realizing that this Court had ruled against his position in that area. However, since *Morrisville Scrap* is pending before the Supreme Court of Pennsylvania, we do not consider the argument abandoned and rule against the claim for exemption on that ground.

There remains the narrow question as to whether the record in this case could justify our ruling that the appellant's process for separating the scrap wire to extract non-ferrous metals comes within the words of the statute as being "the rolling, drawing or extruding of ferrous and non-ferrous metals." Act of June 1, 1889, P. L. 420, Section 21, as amended, 72 P.S. §1871. Inasmuch as it is clearly not "rolling" or "drawing," appellant must establish that the process is one of extrusion. He has not done so. Indeed, an accurate description of what the evidence discloses with regard to the process is set forth in appellant's History of the Case as follows:

"The wire or cable reaches the defendant in a tangled mass. It is put through rotary granulator which cuts the wire into small pieces. Next, any steel wire is removed by magnetic separation. This leaves the non-ferrous wire which is then put through high speed

rotary shear device *called an extruder*. (T., 11, 12, 15) The rotors force the metal through *screens or dies* which take the plastic off the metal and reduces the metal to granules. (T., 11, 12)

"The material is then subjected to a second magnetic separation process to purify it. The plastic is floated out of the metal and this leaves a granulated metal of very high purity called nuggets. (T., 12) The nuggets can be compressed into bricks or sold as is. (T., 13)." (Emphasis supplied) Calling a "high speed power rotary shear device" an extruder does not make the process one of extrusion. The evidence shows that the scrap is put through screens—calling them "screens or dies" does not constitute putting the scrap through dies which approaches the process of extrusion.

It is not necessary to give here, based on this limited expert testimony, a definition of extrusion as used in the Act. It is sufficient for this case to say on this record that a process whereby small pieces of wire are thrown against a screen which takes the plastic off, thereby separating the plastic from the wire, and the particles, having passed through the screen, are further separated by magnetic and floatation processes and the remaining particles of non-ferrous metals are either sold as they are or are compressed into bricks and sold does not constitute a process of extrusion.

It may very well be that the appellant did not go into greater detail with regard to the screening process because it is a proprietary one and not patented. The only picture of the machine and process is so blurred as to be no value as a description. Appellant's expert testified that "You can't make anything out on this unless you know what you are looking at, but this is a large 150 ton extrusion type press. I am afraid our sales manager was a little art conscious." I might add that having been told as a conclusion that the exhibit

is a picture of an extrusion type press, it remains an unintelligible mixture of forms and colors.

## FINDINGS OF FACT

1. The appellant is a Delaware Corporation, with its principal place of business at Tamaqua, Pennsylvania.

2. Appellant has a Certificate of Authority to do business in Pennsylvania, dated August 24, 1966.

3. Appellant removes the non-ferrous materials from scrap wire by a method of cutting, granulating, screening, magnetic separation, and floatation.

## CONCLUSIONS OF LAW

1. Appellant is engaged in the business of cleaning, cutting, sorting, and in some instances, compacting, scrap metal.

2. The activities of the appellant do not constitute manufacturing or extruding within the meaning of the exemptions of the Act of June 1, 1889, P. L. 420, 72 P.S. §1871 et seq.

3. The Franchise Tax of the appellant corporation for its fiscal year ending October 31, 1968, is in the sum of $3,600 as settled by the Revenue Department, sustained by the Resettlement Board and the Board of Finance and Revenue.

## ORDER

AND Now, November 21, 1972, the appeal of Eastern Diversified Metals Corporation is hereby dismissed, the decision of the Board of Finance and Revenue is affirmed, and judgment is directed to be entered in favor of the Commonwealth of Pennsylvania and against Eastern Diversified Metals Corporation in the sum of $3,600, which amount having been paid, the judgment shall be marked satisfied upon payment of costs by appellant, unless exceptions be filed hereto within thirty

(30) days. The Prothonotary is directed to notify forthwith the parties hereto or their counsel of this decree.

———

CONCURRING & DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

With the majority's position on the issue of the scope of our review, I find no fault. I do feel I must depart from the majority's conclusion that appellant may not enjoy the privilege of the Franchise Tax exemption for manufacturing and processing because appellant's process for separating scrap wire to extract non-ferrous metals is not "extrusion."

The narrow question as I see it here is whether appellant's process can be termed "extruding of ferrous and non-ferrous metals." If it is, then he is entitled to the processing exemption.

Unfortunately for us, we find the term "extrusion" is not defined in the statute. However, looking to another source, extrusion is to "shape (as metal, plastic, rubber) by forcing through specially designed openings often after a previous heating of the material or of the opening or both."[1]

We have said that "words and phrases shall be construed according to rules of grammar and according to their common and approved usage. . . ."[2]

The majority concludes that appellant's process is "throwing" of wire against a screen to separate the plastic from the wire, and so is not "extrusion." However, in looking to the testimony of the Director of Research and Development, I find that the major segment of appellant's operation consists of the separation of

———

[1] Webster's Third New International Dictionary (unabridged addition).

[2] Act of May 28, 1937, P. L. 1019, §3, 46 P.S. §533. See *Reich v. Reading*, 3 Pa. Commonwealth Ct. 511, 284 A. 2d 315 (1971).

metal from wire by the use of "high speed rotary shear devices."[3] The large rotary shear devices have screens which turn at over 1200 RPMs and "the speed and the pressure is so great that in forcing it through the screens . . . we force the plastic off of the copper or off of the aluminum and we also put it into various different sizes. . . ."[4]

In my judgment, appellant's process as we have heard and now view it is not one of the simple process of "throwing" of wire against a screen, but consists of a complicated operation through which enormous pressure is created which forces wire through screens which, in turn, isolates the aluminum and copper component of the wire. This process is consistent with the common and approved usage of the term "extrusion," and so appellant is entitled to an exemption from the Franchise Tax.

Accordingly, I dissent.

Judge BLATT joins in this opinion.

---

[3] Notes of Testimony, page 12.
[4] Notes of Testimony, page 12.