# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Strongstown B&K Enterprises, Inc., : 
                    Petitioner : 
                                   : 
               v. : No. 400 F.R. 2013
                                   : Argued: March 7, 2016
Commonwealth of Pennsylvania, : 
                  Respondent : 

**BEFORE:**     HONORABLE RENÉE COHN JUBELIRER, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

**OPINION NOT REPORTED**

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**          **FILED: May 20, 2016**

Strongstown B&K Enterprises, Inc. (Strongstown) petitions for review of the Order of the Board of Finance and Revenue (BF&R) dated May 1, 2013 that granted in part and denied in part Strongstown's Petition for Reassessment of sales and use tax. For purposes of this appeal, Strongstown seeks review only of that portion of the BF&R's determination that denied Strongstown any relief regarding use tax assessed on road signs. For the following reasons, we affirm.

The parties have stipulated to the relevant facts before this Court. Strongstown sold fabricated aluminum road signs, posts, and accompanying miscellaneous hardware (collectively "Road Signs") to the Pennsylvania Department of Transportation (PennDOT) and to municipalities through construction contracts. (Stip. ¶¶ 7, 13, 20.) The Road Signs were installed on

Pennsylvania roads, including the Pennsylvania Turnpike. (Stip. ¶ 20.) Strongstown paid tax on concrete sign foundations and related components such as sleeves or brackets inserted into the foundations. (Stip. ¶ 14.) The parties stipulated that Strongstown is a construction contractor and that all of the Road Signs installed during the period covered by the audit were installed for the Commonwealth through either PennDOT or Pennsylvania municipalities. (Stip. ¶¶ 30, 31.)

The Department of Revenue (Department) performed a sales and use tax audit on Strongstown covering the period from January 1, 2008 through January 31, 2011. (Stip. ¶ 4.) Based on the audit, the Department issued an assessment to Strongstown totaling $2,056,339.26, of which $321,653.86 was unpaid sales tax and $1,734,685.40 was unpaid use tax. (Stip. ¶ 5, Ex. A.) The assessment also included $803,118.26 in penalties and interest. Id. The total amount due according to the audit was $2,859,457.52. Id.

Strongstown filed a Petition for Reassessment of sales and use tax with the Department's Board of Appeals. (Stip. ¶ 6, Ex. B.) Relevant to our inquiry, Strongstown requested relief from $625,809.21 of the use tax assessed on Road Signs furnished and installed under contracts with PennDOT and with municipalities. (Stip. ¶ 7, Ex. B.) After hearing, the Board of Appeals abated the *penalties* by $616,901.71, but denied Strongstown any *tax relief.* (Stip. ¶ 9, Ex. C.)

Strongstown appealed to the BF&R and requested that the use tax assessed on Road Signs be set aside. (Stip. ¶ 10, Ex. D.) After hearing, the BF&R denied relief as to the use tax assessed on the Road Signs. (Stip. ¶ 11, Ex. E.)

Strongstown petitioned for review to this Court.[1] The parties stipulated that the sole question at issue here is whether Pennsylvania's use tax was properly assessed on the Road Signs installed and/or replaced by Strongstown. (Stip. ¶ 13.) The parties have stipulated further that if we find that the use tax was imposed improperly on the Road Signs, Strongstown should be reassessed at $192,349.86, plus applicable interest, and if we find that the use tax was properly imposed, then Strongstown should be reassessed at $818,159.07, plus applicable interest. (Stip. ¶¶ 32, 33.)

Before we address the parties' arguments, we begin by reviewing the relevant provisions of the Tax Reform Code of 1971[2] (Code). Section 202(b) of the Code,[3] 72 P.S. § 7202(b), imposes a six percent tax on the use within the

---

[1] Our review of a BF&R determination is governed by Rule 1571 of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1571, which authorizes this Court to rule on the record made before it or on the stipulation of facts made by the parties. In this circumstance we exercise the broadest scope of review, Eastern Diversified Metals Corp. v. Commonwealth, 297 A.2d 167 (Pa. Cmwlth. 1972), because, "[a]lthough this Court hears such cases in its appellate jurisdiction, 42 Pa. C.S. § 763, this Court functions essentially as a trial court." PICPA Foundation for Education and Research v. Commonwealth, 598 A.2d 1078, 1080 n. 6 (Pa. Cmwlth. 1991) (citations omitted). The stipulation of facts is binding and conclusive upon this Court, but we may draw our own legal conclusions from those facts. Kelleher v. Commonwealth, 704 A.2d 729, 731 (Pa. Cmwlth. 1997). The issue presented in this case poses a question of statutory construction, for which our review is plenary. Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board, 918 A.2d 171, 175 (Pa. Cmwlth. 2007), affirmed, 974 A.2d 1144 (Pa. 2009).

[2] Act of March 4, 1971, P.L. 6, as amended, 72 P.S. §§ 7101-8297.

[3] Section 202 of the Code provides in pertinent part:

Imposition of tax

(a) There is hereby imposed upon each separate sale at retail of tangible personal property or services, as defined herein, within this Commonwealth a tax of six per cent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided.

Commonwealth of tangible personal property purchased at retail. The tax is paid by the user unless sales tax has been paid under Section 202(a) of the Code, 72 P.S. § 7202(a). The Code defines "Use," in pertinent part, as:

> (1) The exercise of any right or power incidental to the ownership, custody or possession of tangible personal property and shall include, but not be limited to transportation, storage or consumption.
>
> * * *
>
> (17) The obtaining by a **construction contractor of tangible personal property** or **services provided to tangible personal property which will be used pursuant to a construction contract whether or not the tangible personal property or services are transferred**.

Sections 201(o)(1) and (17) of the Code, 72 P.S. § 7201(o)(1) and (17) (emphasis added).[4]

The parties stipulated that Strongstown purchased the Road Signs from various vendors but did not pay sales tax to those vendors, and that Strongstown

---

(b) There is hereby imposed upon the use, on and after the effective date of this article, within this Commonwealth of tangible personal property purchased at retail on or after the effective date of this article, and on those services described herein purchased at retail on and after the effective date of this article, a tax of six per cent of the purchase price, which tax shall be paid to the Commonwealth by the person who makes such use as herein provided, except that such tax shall not be paid to the Commonwealth by such person where he has paid the tax imposed by subsection (a) of this section or has paid the tax imposed by this subsection (b) to the vendor with respect to such use. The tax at the rate of six per cent imposed by this subsection shall not be deemed applicable where the tax has been incurred under the provisions of the "Tax Act of 1963 for Education."

72 P.S. § 7202(a), (b).

[4] Subsection (o)(17) was added by Section 1 of the Act of April 23, 1998, P.L. 239, No. 45 ("Act 45").

4

used the Road Signs by installing them along Pennsylvania roads in order to satisfy its obligations under various construction contracts. (Stip. ¶¶ 20, 23.) By virtue of the Stipulation and by the plain language of the Code, there is no dispute that Strongstown is a construction contractor that purchased tangible personal property to use in Pennsylvania in satisfaction of its obligations under various construction contracts. Therefore, unless the Road Signs fall within an exemption to the use tax, the Department properly assessed use tax on the Road Signs pursuant to Section 202(b) of the Code, 72 P.S. § 7202(b).

Strongstown first argues that the Road Signs are exempt as "Building Machinery and Equipment" (BME), which is defined in Section 201(pp) of the Code as follows:

(pp) BUILDING MACHINERY AND EQUIPMENT.

Generation equipment, storage equipment, conditioning equipment, distribution equipment and termination equipment, **which shall be limited to the following**:

> (1) air conditioning limited to heating, cooling, purification, humidification, dehumidification and ventilation;
> (2) electrical;
> (3) plumbing;
> (4) communications limited to voice, video, data, sound, master clock and noise abatement;
> (5) alarms limited to fire, security and detection;
> (6) **control system limited to** energy management**, traffic and parking lot and building access**;
> (7) medical system limited to diagnosis and treatment equipment, medical gas, nurse call and doctor paging;
> (8) laboratory system;
> (9) cathodic protection system; or
> (10) furniture, cabinetry and kitchen equipment.

**The term shall include** boilers, chillers, air cleaners, humidifiers, fans, switchgear, pumps, telephones, speakers, horns,

5

motion detectors, dampers, actuators, grills, registers, **traffic signals**, sensors, card access devices, **guardrails**, medial devices, floor troughs and grates and laundry equipment, together with integral coverings and enclosures, whether or not the item constitutes a fixture or is otherwise affixed to the real estate, whether or not damage would be done to the item or its surroundings upon removal or whether or not the item is physically located within a real estate structure. The term "building machinery and equipment" **shall not include guardrail posts,** pipes, fittings, pipe supports and hangers, valves, underground tanks, wire, conduit, receptacle and junction boxes, insulation, ductwork and coverings thereof.

72 P.S. § 7201(pp) (emphasis added).

This definition lists five general equipment types but then limits the definition to such equipment as is listed in the ten specific subsections that follow ("which shall be **limited** to the following"). Comparing the stipulated "definition" of Road Signs ("fabricated aluminum road signs, posts, and accompanying miscellaneous hardware"), with the language in Section 201(pp) of the Code, the Road Signs do not appear to fall within one of the five general types of equipment listed in the definition of BME, which are generation, storage, conditioning, distribution, or termination. In addition, Road Signs are not specifically listed as included within the definition in the last paragraph as are, for example, traffic signals.

Strongstown argues that the Road Signs fall within subsection 6 of Section 201(pp), 72 P.S. § 7201(pp)(6), which defines BME in relevant part as a "control system limited to energy management, traffic and parking lot and building access." Strongstown posits that since the Road Signs work together to control traffic, they are a "control system" for traffic, and thus exempt from the use tax as they are BME.

6

In order to evaluate this assertion we look to the Stipulation, as that contains all of the facts of record on appeal, for factual support. Based upon the paragraphs in the Stipulation that contain a description of the Road Signs and their characteristics, we can conclude that the Road Signs: are "fabricated aluminum road signs, posts, and accompanying miscellaneous hardware" that are "often damaged and/or subject to wear and are therefore often replaced." (Stip. ¶¶ 7, 22.) Beyond these statements, the only other evidence in the Stipulation regarding the Road Signs and their characteristics are copies of photographs depicting directional signs, a speed limit sign, a "no turn on red" sign and a "stop here on red" sign, a "no left turn" sign and a stop sign. (Stip. Ex. H) There is no evidence or stipulated facts regarding where specifically these Road Signs were placed and how, beyond Strongstown's general suggestion in its brief, these Road Signs work together to control traffic.

Section 201(pp)(6) of the Code describes BME as including "a **control system** limited to . . . traffic . . . ." The term "system" is defined as "a group of devices or artificial objects forming a network or used for a common purpose." Webster's Third New International Dictionary 2322 (2002). There is no evidence in the record to support a finding that the Road Signs at issue are a control system. There is no evidence that they work together, are in a network either with each other or with other traffic devices, or, are electrically networked with other traffic devices to control traffic. We thus agree with the Board that these Road Signs do not fit within the statutory term "control system" as required.

Alternatively Strongstown points out that the Road Signs are installed and often are damaged and/or subject to wear and are replaced. (Stip. ¶ 22.) Strongstown asserts that it provides concrete foundations and bases and fitted

7

sleeves into which the Road Signs are installed.  As the Road Signs are easily removed from these foundations, Strongstown argues that the Road Signs should be considered tangible personal property even after they are installed.  Strongstown relies on Commonwealth v. Beck Electric Construction, Inc., 403 A.2d 553 (Pa. 1979) (tangible personal property, as opposed to real property, is not subject to sales or use tax), and Section 204(12) of the Code, 72 P.S. § 7204(12),[5] which Strongstown contends together stand for the proposition that items of tangible personal property sold to a tax-exempt entity such as the Commonwealth are not subject to sales or use tax.  Strongstown thus suggests that the Road Signs should not be subject to tax as Strongstown is the vendor of those signs.

Strongstown further argues that it purchased the Road Signs from its vendors for purposes of resale to the Commonwealth.  As such, Strongstown contends that those purchases were not taxable sales but were instead "purchases for resale." Under Section 201(k) of the Code, 72 P.S. § 7201(k),[6] only "sales at retail" are

---

[5] Exclusions from tax

The tax imposed by section 202 shall not be imposed upon any of the following:

\* \* \*

(12) The sale at retail to, or use by the United States, this Commonwealth or its instrumentalities or political subdivisions of tangible personal property or services.

72 P.S. § 7204(12).

[6] Definitions

The following words, terms and phrases when used in this Article II shall have the meaning ascribed to them in this section, except where the context clearly indicates a different meaning:

\* \* \*

(k) "SALE AT RETAIL."

subject to sales or use tax, and purchases for resale are always excluded from sales and/or use tax. Thus, only the final sale to the end user is subject to sales or use tax.

We have addressed previously, and have not been persuaded by these alternative arguments. In <u>Plum Borough School District v. Commonwealth</u>, 860 A.2d 1155, 1159 (Pa. Cmwlth. 2004), <u>aff'd per curiam</u>, 891 A.2d 726 (Pa. 2006), we held that a construction contractor that contracts with an exempt entity is liable

---

(1) Any transfer, for a consideration, of the ownership, custody or possession of tangible personal property, including the grant of a license to use or consume whether such transfer be absolute or conditional and by whatsoever means the same shall have been effected.

(2) The rendition of the service of printing or imprinting of tangible personal property for a consideration for persons who furnish, either directly or indirectly the materials used in the printing or imprinting.

(3) The rendition for a consideration of the service of--

(i) Washing, cleaning, waxing, polishing or lubricating of motor vehicles of another, whether or not any tangible personal property is transferred in conjunction therewith; and

(ii) Inspecting motor vehicles pursuant to the mandatory requirements of "The Vehicle Code."

(4) The rendition for a consideration of the service of repairing, altering, mending, pressing, fitting, dyeing, laundering, drycleaning or cleaning tangible personal property other than wearing apparel or shoes, or applying or installing tangible personal property as a repair or replacement part of other tangible personal property except wearing apparel or shoes for a consideration, whether or not the services are performed directly or by any means other than by coin-operated self-service laundry equipment for wearing apparel or household goods and whether or not any tangible personal property is transferred in conjunction therewith, except such services as are rendered in the construction, reconstruction, remodeling, repair or maintenance of real estate: Provided, however, That this subclause shall not be deemed to impose tax upon such services in the preparation for sale of new items which are excluded from the tax under clause (26) of section 204, or upon diaper service.

72 P.S. § 7201(k).

9

for tax on all property it purchases unless the property constitutes BME under Section 204(57) of the Code, 72 P.S § 7204(57).[7]  In Kinsley Construction, Inc. v. Commonwealth, 894 A.2d 832 (Pa. Cmwlth. 2006), we subsequently held that:

> In both Crawford Central School District v. Commonwealth, 839 A.2d 1213 (Pa. Cmwlth. 2004) and Plum Borough, this Court recognized that the sales and use tax exclusion for construction contractors is now limited to building machinery and equipment as set forth in Section 204(57) of the Code and, further, that the Section 204(12) exemption is no longer available to construction contractors like Petitioner.

Kinsley, 894 A.2d at 835.  The Plum Borough Court also addressed Strongstown's argument that the Road Signs were not taxable under Beck Electric as follows:

> The definition of "use" found in Section 201(o)(17) of the Code, 72 P.S. § 7201(o)(17), which was added by Act 45 in 1998, provides that the term "use" includes obtaining by construction contractors tangible personal property or services which would be used pursuant to a construction contract, whether or not the tangible personal property is transferred. Accordingly, because under Section

---

[7] The tax imposed by section 202 shall not be imposed upon any of the following:

* * *

(57) The sale at retail to or use by a construction contractor of building machinery and equipment and services thereto that are:

(i) transferred pursuant to a construction contract for any charitable organization, volunteer firemen's organization, volunteer firefighters' relief association, nonprofit educational institution or religious organization for religious purposes, provided that the building machinery and equipment and services thereto are not used in any unrelated trade or business; or

(ii) transferred to the United States or the Commonwealth or its instrumentalities or political subdivisions.

72 P.S. § 7204(57).

10

202(a) of the Code the tax is imposed on "use" of the property, a construction contractor who contracts with an exempt entity such as the School District is now liable for tax on all property the contractor purchases unless the property constitutes building machinery and equipment.

Plum Borough, 860 A.2d. at 1159-60. Given the holdings in Plum Borough and in Kinsley, and our conclusion that these Road Signs are not BME, we cannot accept Strongstown's arguments that it is exempt from use tax because the Road Signs are tangible personal property and sales for resale.

Finally, Strongstown argues that sound public policy requires that items sold to the Commonwealth to be used on or near highways should not be subject to sales or use tax. Strongstown contends that where highway contracts are being paid for by the taxpayers, it makes no sense to impose a tax that would increase the cost of contracts between the Commonwealth and construction companies that do the work on the Commonwealth's highways. However, we are bound by the plain language of the Code and by our previous decisions interpreting the Code. Strongstown's policy argument thus should be directed to the General Assembly.

For these reasons we hold that the Department properly assessed the use tax on the Road Signs. The BF&R's Order dated May 1, 2013 is affirmed.

_____
**RENÉE COHN JUBELIRER,** Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Strongstown B&K Enterprises, Inc.,    :
                        Petitioner    :
                                  :
                  v.           :   No. 400 F.R. 2013
                                  :
Commonwealth of Pennsylvania,    :
                    Respondent    :

## **O R D E R**

**NOW**, this 20th day of May, 2016, the Order of the Board of Finance and Revenue dated May 1, 2013 is AFFIRMED. Unless exceptions are filed within thirty (30) days in accordance with the provisions of Pa.R.A.P. 1571(i), this matter is remanded to the Board of Finance and Revenue to reassess Strongstown B&K Enterprises, Inc.'s use tax in accordance with the parties' Stipulation filed with this Court.

 

_____
**RENÉE COHN JUBELIRER,** Judge