# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Green Acres Contracting     :
Company, Inc.,        :
        Petitioner :
            :
     v.      :  No. 81 F.R. 2013
            :  Submitted: March 8, 2017
Commonwealth of Pennsylvania, :
       Respondent :

BEFORE:  **HONORABLE MARY HANNAH LEAVITT,** President Judge
      **HONORABLE RENÉE COHN JUBELIRER,** Judge
      **HONORABLE ROBERT SIMPSON,** Judge
      **HONORABLE P. KEVIN BROBSON,** Judge
      **HONORABLE ANNE E. COVEY,** Judge
      **HONORABLE JULIA K. HEARTHWAY,** Judge
      **HONORABLE JOSEPH M. COSGROVE,** Judge

**OPINION BY**
**JUDGE COHN JUBELIRER**     **FILED:  June 13, 2017**

   Before the Court en banc are the Exceptions of Green Acres Contracting Company, Inc. (Green Acres) to this Court's August 10, 2016 Opinion and Order affirming in part and reversing in part the Order of the Board of Finance and Revenue (Board) that granted in part and denied in part Green Acres' Petition for Reassessment of sales and use tax.  Green Acres Contracting Co., Inc. v. Commonwealth (Pa. Cmwlth., No. 81 F.R. 2013, filed August 10, 2016) (Green Acres I).  At issue is the scope of the term "guardrails" as used in the definition of tax exempt "Building Machinery and Equipment" (BME).  Green Acres argues that the term "guardrails" refers to the entire guardrail system, with the exception

of guardrail posts, which are specifically excluded, and, as such, nuts, bolts, washers, and guardrail blocks, which are necessary for the construction of the guardrails, constitute tax exempt BME as that term is defined under Section 201(pp) of the Tax Reform Code of 1971 (Tax Code),[1] 72 P.S. § 7201(pp).

The underlying facts are not in dispute and may be summarized briefly as follows.[2] Green Acres is a construction contractor engaged primarily in the installation of highway guardrail systems, consisting of guardrail panels and guardrail posts, and road signs for the Pennsylvania Department of Transportation (PennDOT) and other state departments of transportation. Green Acres I, slip op. at 1-2. Green Acres "uses nuts, bolts and washers to attach 12.5-foot long guardrail panels to each other to obtain the required guardrail length and to attach these guardrails to guardrail posts . . . ." Id., slip op. at 2. Guardrail blocks, composed of steel, plastic, or wood, "are installed between the guardrail and each guardrail post to increase the force that the guardrail system can withstand." Id. Green Acres purchased the nuts, bolts, washers, and guardrail blocks without paying any sales tax on those items. There is no dispute that Green Acres used nuts, bolts, washers, and guardrail blocks in the construction and installation of guardrail systems for PennDOT and other entities.

Section 202(b) of the Tax Code, 72 P.S. § 7202(b), imposes a six percent use tax on the use within the Commonwealth of tangible personal property "purchased at retail." Tangible personal property "used pursuant to a construction contract" constitutes a "use" subject to this tax.[3] 72 P.S. § 7201(o)(1) and (17). However,

---

[1] Act of March 4, 1971, P.L. 6, as amended, 72 P.S. §§ 7101-10004.
[2] A more comprehensive description of the facts is found in Green Acres I, slip op. at 1-4.
[3] Section 201(o)(1) and (17) of the Code provides, in pertinent part:

**(Footnote continued on next page…)**

2

tangible personal property used in a construction contract that is transferred to the Commonwealth is exempt from state sales and use taxes if it is BME pursuant to Section 204(57) of the Tax Code, 72 P.S. § 7204(57). BME, as defined, includes generally "control system[s] limited to energy management, **traffic** and parking lot and building access" and specifically includes "guardrails" but does "not include guardrail posts," as follows:

> **The term shall include** boilers, chillers, air cleaners, humidifiers, fans, switchgear, pumps, telephones, speakers, horns, motion detectors, dampers, actuators, grills, registers, traffic signals, sensors, card access devices, **guardrails**, medial devices, floor troughs and grates and laundry equipment, together with integral coverings and enclosures, whether or not the item constitutes a fixture or is otherwise affixed to the real estate, whether or not damage would be done to the item or its surroundings upon removal or whether or not the item is physically located within a real estate structure. **The term** "building machinery and equipment" **shall not include guardrail posts**, pipes, fittings, pipe supports and hangers, valves, underground tanks, wire, conduit, receptacle and junction boxes, insulation, ductwork and coverings thereof.

72 P.S. § 7201(pp) (emphasis added). Thus, the statute distinguishes between "**guardrails**," which are tax exempt BME, and "**guardrail posts**," which are not

---

**(continued…)**

> (1) The exercise of any right or power incidental to the ownership, custody or possession of tangible personal property and shall include, but not be limited to transportation, storage or consumption.
>
> * * *
>
> (17) The obtaining by a construction contractor of tangible personal property or services provided to tangible personal property which will be used pursuant to a construction contract whether or not the tangible personal property or services are transferred.

72 P.S. § 7201(o)(1) and (17). Subsection (o)(17) was added by Section 1 of the Act of April 23, 1998, P.L. 239.

3

tax exempt BME. However, the statute does not specify the tax status of the nuts, bolts, washers, and guardrail blocks, all of which are necessary for guardrail system construction.

The Department of Revenue (Department) performed a sales and use tax audit on Green Acres for the period from January 1, 2007 through March 31, 2010. Based on the audit, the Department issued an assessment to Green Acres totaling $413,145.24, plus interest, of which $357.81 was unpaid sales tax, $410,091.43 was unpaid use tax, and $2,696.00 was unpaid Allegheny County use taxes; there was also $46,865.24 in penalties. Pertinent here, Green Acres filed a Petition for Reassessment with the Department's Board of Appeals, seeking relief from $129,354.81 of the use tax assessed on nuts, bolts, and washers that it used in constructing and installing its guardrail systems and $16,116.27 for guardrail blocks contending they were excluded as BME. While the Board of Appeals reduced the total assessment to $410,233.41, plus interest, it denied Green Acres any tax or penalty relief. Green Acres appealed to the Board, which abated the penalties, but rejected Green Acres' requested relief regarding, among other things, the nuts, bolts, washers, and guardrail blocks.[4] Green Acres then appealed to this Court for review of the Board's Order.[5]

---

[4] The Board provided relief with respect to other items upon which use taxes were assessed, "resulting . . . in a total tax deficiency reassessment of $374,565.66, plus interest." Green Acres I, slip op. at 4. The other items for which relief was granted are not at issue in this appeal. For a discussion of these items, see id., slip op. at 3-4.

[5] Our review of a Board determination is governed by Rule 1571 of the Pennsylvania Rules of Appellate Procedure, Pa. R.A.P. 1571, which authorizes this Court to rule on the record made before it or on the stipulation of facts made by the parties. In this circumstance, we exercise the broadest scope of review, E. Diversified Metals Corp. v. Commonwealth, 297 A.2d 167, 168 (Pa. Cmwlth. 1972), because, "[a]lthough this Court hears such cases in its appellate jurisdiction, 42 Pa. C.S. § 763, this Court functions essentially as a trial court." PICPA Found. for Educ. and Research v. Com., 598 A.2d 1078, 1080 n.6 (Pa. Cmwlth. 1991) (citations

**(Footnote continued on next page…)**

4

On August 10, 2016, this Court issued an Order affirming the Board's use tax assessment on the nuts, bolts, washers, and guardrail blocks used in the construction and installation of guardrail systems and reversed on other grounds not pertinent to these Exceptions. Specifically, after review of the statutory provisions, this Court concluded that, because the Tax Code did not list "guardrail systems" as BME, but only "guardrails," and because "guardrail posts," which are an essential part of a guardrail system, are excluded as BME, it was the Legislature's intent to exempt as BME *only* the horizontal rails of guardrails. Green Acres I, slip op. at 7. Based on this conclusion, the Court found that the term "guardrails" only encompasses the nuts, bolts, and washers, which are "internal components" used to connect horizontal guardrail panels, while guardrail blocks and the nuts, bolts, and washers used to connect guardrail panels to guardrail posts are not tax exempt BME under Section 204(57) of the Tax Code. Id., slip op. at 8. However, because Green Acres could not quantify the amount or percentage of nuts, bolts, and washers used only for attachment of horizontal guardrail panels, it did not prove the amount of the $129,354.81 assessment attributable to the exempt nuts, bolts, and washers. Id., slip op. at 9.

In its Exceptions, Green Acres argues that it was error to conclude that nuts, bolts, and washers are tax exempt only insofar as they are used to connect horizontal guardrail panels because the term "guardrails" refers to *the entire guardrail system*, not just the horizontal elements of guardrails. Examining the structure of the BME definition, Green Acres argues that "guardrails" are included

_____

**(continued…)**

omitted). The issue presented in this case poses a question of statutory construction, for which our review is plenary. Malt Beverages Distrib. Ass'n v. Pa. Liquor Control Bd., 918 A.2d 171, 175 (Pa. Cmwlth. 2007), aff'd, 974 A.2d 1144 (Pa. 2009).

as a "control system," with the "guardrail posts" carved out from that category, just as "insulation and ductwork" are carved out of the category of "air conditioning." (Green Acres' Br. at 9.) Because "guardrail posts" are a carve-out from the broader category of "guardrails," Green Acres contends that everything else that is part of the "guardrails," other than the posts, remain exempt, including the horizontal elements (guardrail panels), guardrail blocks, *and* connecting materials (nuts, bolts, and washers).

In cases requiring the interpretation of statutes, we are guided by the Statutory Construction Act of 1972,[6] which directs that "[t]he object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." Walker v. Eleby, 842 A.2d 389, 400 (Pa. 2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). However, we employ statutory construction "[w]hen the words of the statute are not explicit." 1 Pa. C.S. § 1921(c). In doing so, the general rule is that "[w]ords and phrases [are to] be construed . . . according to their common and approved usage[,]" and "[e]very statute [is to] be construed, if possible, to give effect to all its provisions" to assure "that no provision is reduced to mere surplusage." 1 Pa. C.S. §§ 1903(a), 1921(a); Walker, 842 A.2d at 400.

The plain language of the statute provides that "guardrails" are considered tax exempt BME, while "guardrail posts" are not. The term "guardrails" is not defined in the Tax Code; however, "guardrail" is defined in the dictionary as "a

---

[6] 1 Pa. C.S. §§ 1501-1991.

6

railing for guarding against danger or trespass," Webster's Third New International Dictionary 1007 (2002), or "a barrier . . . placed along the edge of a highway at dangerous points," Merriam-Webster's Collegiate Dictionary 554 (11th ed. 2003). "Barrier" is defined as "something material that blocks or is intended to block passage," Merriam-Webster's Collegiate Dictionary 100 (11th ed. 2003), and "railing" is defined as "a barrier consisting of a rail **and supports**," id. at 1027 (emphasis added); Webster's Third New International Dictionary 1875 (2002) ("a barrier (as a fence or balustrade) consisting of a rail and supports"). A barrier or railing is, thus, composed of *both* horizontal and vertical elements, which, when constructed, function as a system. Green Acres observes that "[g]uardrail construction and installation is subject to strict federal and state Department of Transportation engineering specifications." (Green Acres' Reply Br. at 5 n.2.) We note that both federal and state publications describe guardrails as a "system." See, e.g., Guardrail 101, Federal Highway Admin. (U.S. Dep't of Transp., Dec. 10, 2014), https://www.fhwa.dot.gov/guardrailsafety/guardrail101.pdf (last visited June 12, 2017) (stating that "[g]uardrails function as a system, which includes the guardrail itself, the posts, the soil that the posts are driven in, the connection of the guardrail to the posts, the end terminal, and the anchoring system at the end terminal. All these elements have a bearing in how the guardrail will function upon impact."); Roadside Safety Pocket Guide, Pub. 652 (12-10), at 8 (Pa. Dep't of Transp., 2010 ed.), https://www.dot.state.pa.us/public/pubsforms/Publications/Pub%20652.pdf (last visited June 12, 2017) (listing the different types of guardrail systems, including flexible guardrail systems and semi-rigid guardrail systems). Without the entire guardrail system in place, including the horizontal panels, nuts, bolts, washers, guardrail blocks, and vertical posts, a guardrail would not function

7

or serve the purpose for which the system was designed: as a railing or barrier to prevent against danger on roadways.

The definitions and common usage of the term "guardrails," thus refers to more than the horizontal elements and includes *the entire guardrail system* as it is constructed and installed along a road and/or highway. This understanding of "guardrails" fits well within the structure of the BME definitional section, which establishes a tax exemption for "guardrails" and excludes (thus making taxable), simply "guardrail posts." That only the "guardrail posts" are carved out as taxable explains the Legislature's decision not to specify the taxable status of the various other parts of the guardrail system or differentiate between different types of guardrail systems.[7]

The Commonwealth disagrees that **any** nuts, bolts, washers, and guardrail blocks should be included within the definition of "guardrails." It argues in its brief that there is no distinction between the nuts, bolts, washers, and guardrail blocks used to connect the horizontal elements and those that are used to connect the guardrail panels to the posts and that the Court erred in finding that **any** of them constitute BME. We now interpret the statute as not distinguishing between

---

[7] There is not just one type of "guardrail system." Green Acres' Controller explained in his deposition testimony that there are different types of guardrail systems, at least one of which includes blocks between the panels and the posts in order to strengthen the system as a whole and allow it to withstand greater force. (See Dep. of Green Acres Controller, James T. McCort, at 25-26 (identifying 2-S type and 2-W type guardrail systems, one of which, 2-S, uses blocks between the guardrail and the post); see also Green Acres Filing of Trial Type Evidence, filed Dec. 23, 2015, Ex. 1 (providing photos of 2-S and 2-W guardrails).) In addition, there can be an "end terminal" and anchoring system used. See Guardrail 101, Federal Highway Admin. (U.S. Dep't of Transp., Dec. 10, 2014), https://www.fhwa.dot.gov/guardrailsafety/guardrail101.pdf (last visited June 12, 2017). The Legislature did not distinguish between different types of guardrail systems, such as those that use blocks and those that do not, for purposes of the BME definition.

the nuts, bolts, washers, and guardrail blocks used to connect the different parts of the guardrail system to each other.  Therefore, after our further review, we hold that only the guardrail posts are excluded from BME, and the nuts, bolts, washers, and guardrail blocks Green Acres utilized to connect the elements of the guardrail system together fall within the definition of "guardrails," and are therefore exempt from use tax as BME.

Accordingly, we grant Green Acres' Exceptions.


 

_____

**RENÉE COHN JUBELIRER,** Judge


Judge McCullough did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Green Acres Contracting : 
Company, Inc., : 
               Petitioner : 
  : 
          v. :   No. 81 F.R. 2013
  : 
Commonwealth of Pennsylvania, : 
              Respondent : 

## O R D E R

**NOW**, June 13, 2017, the Exceptions of Green Acres Contracting Company, Inc., filed in the above-captioned matter, are **GRANTED**. This Court's August 10, 2016 Order is **VACATED** in part insofar as it upheld the Board of Finance and Revenue's (Board) assessment of $145,471.08 in use taxes on nuts, bolts, washers, and guardrail blocks, and is otherwise **CONFIRMED**. The Order of the Board is **REVERSED** with respect to its assessment of $145,471.08 in use taxes on nuts, bolts, washers, and guardrail blocks. Judgment shall be entered in favor of the Commonwealth in the amount of $217,564.73.

 

_____
**RENÉE COHN JUBELIRER,** Judge