# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kuharchik Construction, Inc.,     :
         Petitioner     :
         :
         v.     :   No. 486 F.R. 2015
         :   Submitted: June 9, 2021
Commonwealth of Pennsylvania,     :
         Respondent     :


BEFORE:     **HONORABLE P. KEVIN BROBSON,** President Judge
             **HONORABLE RENÉE COHN JUBELIRER,** Judge
             **HONORABLE PATRICIA A. McCULLOUGH,** Judge
             **HONORABLE ANNE E. COVEY,** Judge
             **HONORABLE MICHAEL H. WOJCIK,** Judge
             **HONORABLE ELLEN CEISLER,** Judge
             **HONORABLE J. ANDREW CROMPTON,** Judge


**OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: October 14, 2021**


Before the Court *en banc* are Exceptions filed by the Commonwealth of Pennsylvania (Commonwealth) to a July 15, 2020 three-judge panel Opinion and Order affirming in part and reversing in part the order of the Board of Finance and Revenue (Board) that granted in part and denied in part Kuharchik Construction, Inc.'s (Petitioner) Petition for Review of the use taxes imposed against it. *Kuharchik Constr., Inc. v. Commonwealth*, 236 A.3d 122 (Pa. Cmwlth. 2020) (*Kuharchik I*). Specifically, we concluded that Petitioner's purchase and use of items that support a traffic signal–specifically, signal poles, mast arms, and pedestal bases (Traffic

Signal Related Purchases)[1]–qualify as "building machinery and equipment" (BME) as defined by Section 201(pp) of the Tax Reform Code of 1971 (Code), 72 P.S. § 7201(pp) (Section 201(pp)).[2]  The Commonwealth asserts that this Court erred because:  our decision that the Traffic Signal Related Purchases constitute BME resulted from an improper statutory construction analysis that is inconsistent with prior precedent; the holding analyzed BME as an exception to use tax rather than an exclusion and thus improperly modified the Commonwealth's burden; the Court misconstrued and conflated the Commonwealth's arguments and discussions, as well as the relevant statutory language; and the opinion contained factual conclusions inconsistent with or contradictory to the parties' Joint Stipulations of Fact (Stipulation).  After careful review, we overrule the Exceptions.

## I.    BACKGROUND

The underlying facts, as stipulated by the parties and set forth fully in *Kuharchik I*, need not be restated here.  For the present analysis, it is sufficient to state that Petitioner is a Pennsylvania corporation engaged in the electrical construction contractor business that regularly contracts with the Commonwealth and its subdivisions.  (Stipulation (Stip.) ¶¶ 13-14.)  Pursuant to construction contracts with the Commonwealth, Petitioner purchased and installed the Traffic

_____

[1] In *Kuharchik I*, the "Contested Items" included signal poles with mast arms, light poles with mast arms, camera poles with mast arms, and pedestal bases.  *Kuharchik I*, 236 A.3d at 125. We reversed the Board's order in part, holding that of these contested items, only the Traffic Signal Related Purchases were exempt from the Commonwealth's use tax.  However, we affirmed in part because the remaining contested items were subject to the use tax.  *Id.* at 140.

We also held that the Commonwealth's failure to assess use taxes in a prior audit against items related to the contested items in this matter did not equitably estop the Commonwealth from subsequently assessing such taxes.  *Id*. at 139-40.  Because Petitioner has not filed any exceptions to this holding, we will not address it further.

[2] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7201(pp).

Signal Related Purchases in connection with the installation of traffic signals. (*Id.* ¶ 15.) Petitioner did not pay sales tax or remit use tax in purchasing the Traffic Signal Related Purchases. (*Id.* ¶¶ 27-29.)

The Department of Revenue (Department) performed a sales and use tax audit of Petitioner's activities covering the period of January 1, 2011, through January 31, 2014. (*Id.* ¶ 4.) Based on the audit, the Department found that Petitioner had a use tax deficiency. (*Id.* ¶¶ 5, 19, 19(a), 19(b), Exhibits (Exs.) A, B.) The Department found that the Traffic Signal Related Purchases were taxable because they do not qualify as BME. Petitioner then filed a Petition for Reassessment with the Department's Board of Appeals (BOA), contesting the audit's finding as to the use tax deficiency. (*Id.* ¶ 6, Ex. C.) While the BOA abated the penalties associated with the use tax deficiency because Petitioner showed good faith and a lack of negligence, it denied any tax relief, finding that the Traffic Signal Related Purchases are not BME but, rather, fell within the "real estate structure" exception to the use tax, as found in Section 201(qq) of the Code. (*Id.* Ex. D.) However, given that Petitioner is a construction contractor, the BOA found that this exception is not available to Petitioner and concluded that the Traffic Signal Related Purchases are subject to the Commonwealth's use tax. (*Id.* Ex. D at 2.) Petitioner then filed a Petition for Review with the Board. (*Id.* ¶ 8, Ex. E.) The Board denied relief, agreeing with the BOA's conclusion that the Traffic Signal Related Purchases are not within the definition of BME. (*Id.* Ex. F at 7.)

Petitioner then petitioned this Court for review of that order, asserting that the Traffic Signal Related Purchases are exempt as BME because the items are included under the term "traffic signals," as defined in Section 201(pp) or, alternatively, that the items constitute a traffic control system, which also qualifies as BME. In

response, the Commonwealth argued that the Traffic Signal Related Purchases do not fit the unambiguous definition of BME, since they do not meet the "two-part test" from *Kinsley Construction, Inc. v. Commonwealth*, 894 A.2d 832 (Pa. Cmwlth. 2006), but instead are "structural supports" under the "real estate structure" exception.

In *Kuharchik I*, this Court agreed with Petitioner that the term "traffic signals" in the definition of BME necessarily encompasses the Traffic Signal Related Purchases because those items are required to support a traffic signal head for purposes of controlling traffic. *Kuharchik I*, 236 A.3d at 132. After engaging in a statutory construction analysis as to the meaning of the term "traffic signals," we determined that the common usage of the term is an object used to transmit information, such as a notice or warning, to control traffic. For supportive inferences to this meaning of the term, we looked to the sample traffic signal plan provided by Petitioner, (Stip. Ex. H at 64), and the Department of Transportation's (DOT) "Traffic Signal Design Handbook" (Handbook), (Stip. Ex. L). *Id.* at 132-33. We further rejected the Commonwealth's argument that the Traffic Signal Related Purchases cannot be BME because those items are "real estate structure" under Section 201(qq). *Id.* at 134. Looking to Section 201(qq), which explicitly includes both "structural supports" and "traffic control devices," we reasoned that the inclusion of traffic control related items in both the definition of BME and "real estate structure" indicates that these definitions overlap. *Id.* Finding no statutory language indicating that an item cannot be BME simply because that item may also fall within the definition of "real estate structure," and recognizing that the Legislature did not include the Traffic Signal Related Purchases in the exclusions from the definition of BME as it did "conduit," "receptacle," and "junction boxes,"

4

we concluded that the Traffic Signal Related Purchases were included in the commonly used meaning of "traffic signals." *Id.* at 134-35. Accordingly, we reversed with regard to the Traffic Signal Related Purchases but affirmed with respect to the remaining contested items.

## II. EXCEPTIONS

The Commonwealth filed Exceptions pursuant to Rule 1571(i) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1571(i), in which it asserts this Court erred by: (1) concluding that the Traffic Signal Related Purchases constitute BME through an improper statutory interpretation analysis; (2) allegedly treating BME as an exception rather than an exclusion to use tax and thus improperly modifying the holding in *Crawford Central School District v. Commonwealth*, 888 A.2d 616 (Pa. 2005); (3) misconstruing the Commonwealth's argument with regard to "support structures" and conflating statutory terms; and (4) making certain factual conclusions that were inconsistent with, unsupported by, or contradictory to the Stipulation.[3] We address these Exceptions in turn.

---

[3] The Commonwealth's Exceptions have been combined and reorganized for ease of discussion. The Commonwealth also took exception to our "determination that Pennsylvania Courts have [n]ever applied equitable principles to bar the Commonwealth from exercising its tax assessment power." (Exceptions ¶ 10 (emphasis omitted).) Given that we found in favor of the Commonwealth with regard to this issue, holding that any representation from the Department as to the prior audit against Petitioners would not operate to estop the Commonwealth from assessing use taxes, *Kuharchik I*, 236 A.3d at 140, this Exception is not a basis for reversing our opinion.

*A. Whether this Court erred in determining that the Traffic Signal Related Purchases constitute BME and in our statutory interpretation analysis in so concluding.*

1. <u>Parties' Arguments</u>

The Commonwealth takes exception to this Court's legal determination that the term "traffic signals" in the definition of BME encompasses "'poles, mast arms, and pedestal bases,' 'conduit receptacle, and junction boxes,' or other items 'required to support a traffic signal head for purposes of controlling traffic.'" (Exceptions ¶ 1 (quoting *Kuharchik I*, 236 A.3d at 132).) First, the Commonwealth takes exception to this Court's statutory construction analysis in *Kuharchik I*. (Exceptions ¶ 2.) The Commonwealth argues that this Court erred by employing "a three-step process", in which we: (1) "spliced together Merriam-Webster's definitions of the terms 'traffic signal' and 'signal'"; (2) "syllogized that judicially-spliced definition with [the] separately undefined term . . . 'signal head' to expand that judicially-spliced definition as encompassing other 'related items' which are 'functionally required'"; and (3) "re-engrafted" the relevant statutory language onto our "syllogized-spliced definition as a post hoc exception" to arrive at the conclusion that the term "traffic signals" encompasses the Traffic Signal Related Purchases. (Commonwealth's Brief (Br.) at 4.) Additionally, the Commonwealth asserts that it was error to consider DOT's Handbook as an aspect of our statutory construction analysis. (Exceptions ¶ 2(a).)

The Commonwealth also contends that the Court failed to consider the factors and presumptions of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa.C.S. §§ 1501-1991. (Exceptions ¶ 2(e).) Further, the Commonwealth asserts that "the BME definition is unambiguous" and that this Court "could have simply denied Petitioner's [P]etition on that basis." (Commonwealth's Br. at 19.) Because we found the term "traffic signals" to be ambiguous, the Commonwealth

argues, this Court erred in not considering the requisite factors and presumptions under the Statutory Construction Act. (*Id*. (citing 1 Pa.C.S. §§ 1921-1922).) Specifically, the Commonwealth contends that the Court failed to consider legislative intent, in that our "interpretation does not advance th[e] legislative goals of certainty and clarity[.]" (Commonwealth's Br. at 21.) Finally, because this Court ignored these factors and presumptions, the Commonwealth avers that our statutory interpretation analysis is inconsistent with that in *East Coast Vapor, LLC v. Pennsylvania Department of Revenue*, 189 A.3d 504 (Pa. Cmwlth. 2018); *Green Acres Contracting Co., Inc. v. Commonwealth*, 163 A.3d 1147 (Pa. Cmwlth. 2017); *Strongstown B&K Enterprises*, *Inc. v. Commonwealth*, 152 A.3d 360 (Pa. Cmwlth. 2016), *aff'd,* 171 A.3d 252 (Pa. 2017); and *Kinsley Construction, Inc.*, 894 A.2d 832. (Exceptions ¶ 4; Commonwealth's Br. at 13-14, 16-17.)

In response, Petitioner argues that the Court in *Kuharchik I* properly interpreted the statute and that "[t]he Commonwealth's exceptions merely disagree with the [Court's] interpretation of the statute, but offer no reason that [*Kuharchik I*] should be overturned." (Petitioner's Br. at 2.) To the extent that the Commonwealth argues that *Kuharchik I* is inconsistent with other precedential authority, Petitioner asserts that these cases "were either already addressed in a detailed fashion by the [Court in *Kuharchik I*], or are so distinguishable that they would not have been instructive[.]" (*Id.* at 3.) Because we addressed the crux of the Commonwealth's arguments in *Kuharchik I*, Petitioner argues the Exceptions should be denied. (*Id.* at 4-5 (citing *Greenwood Gaming & Ent., Inc. v. Commonwealth*, 218 A.3d 982, 988 (Pa. Cmwlth. 2019); *Solar Turbines Inc. v. Commonwealth*, 841 A.2d 626, 628 (Pa. Cmwlth. 2004)).) Moreover, Petitioner argues that, despite the Commonwealth's many Exceptions to our legal conclusions and statutory analysis,

7

it does not offer any alternative analysis in which this Court should have engaged or any argument as to why the Traffic Signal Related Purchases should not be considered a part of a "traffic signal" apparatus. (*Id.* at 8.) Petitioner further asserts that this Court did not determine that the term "traffic signals" was ambiguous; "rather, it simply proceeded to interpret the term according to its 'common usage,' given the absence of a statutory definition." (*Id.* at 18-19 (quoting *Kuharchik I*, 236 A.3d at 131-32).) Thus, Petitioner maintains that our statutory construction was proper and that this Court should deny the Exceptions.

In its Reply Brief, the Commonwealth argues that the Court did not apply the plain meaning of the term "traffic signal" and that the term is ambiguous. (Commonwealth's Reply Br. at 2-4.) Even if unambiguous, the Commonwealth maintains that the Court failed to interpret the term properly under Section 1903(a) of the Statutory Construction Act, 1 Pa.C.S. § 1903(a), because we did not specifically analyze the term as a technical or nontechnical phrase. (*Id.* at 6.) Regardless of whether the Court interpreted the term as a technical or nontechnical phrase, the Commonwealth argues that the Court either did not apply "the peculiar and appropriate meaning of a technical term," or that the meaning the Court deduced was not a "common and approved usage" of the term. (*Id.* at 7-8.) Further, by looking to only one dictionary definition, the Commonwealth asserts that we "essentially suggested Merriam-Webster to be the *exclusive* referee for determining the 'common and approved usage' of a term." (*Id.* at 8-9 n.6 (emphasis in original).) The Commonwealth finally clarifies that it does not take exception to the mere "splicing" two terms together but with the Court's "[s]yllogizing the judicially[-]spliced definition" against the term "signal head" and then "[e]ngrafting separate

8

statutory language as a post-hoc exception to its syllogized-spliced definition." (*Id.* at 10 n.8 & n.9.)

### 2. Analysis

As we said in *Kuharchik I*, this Court's statutory interpretation is guided by the Statutory Construction Act. "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act, 1 Pa.C.S. § 1921(a). "The clearest indication of legislative intent is generally the plain language of a statute." *Walker v. Eleby*, 842 A.2d 389, 400 (Pa. 2004). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). However, we employ statutory construction "[w]hen the words of the statute are not explicit[.]" 1 Pa.C.S. § 1921(c). In doing so, the general rule is that "[w]ords and phrases shall be construed . . . according to their common and approved usage[,]" and "[e]very statute [is to] be construed, if possible, to give effect to all its provisions" to assure "that no provision is reduced to mere surplusage." Sections 1903(a) and 1921(a) of the Statutory Construction Act, 1 Pa.C.S. §§ 1903(a), 1921(a); *Walker*, 842 A.2d at 400. It is well settled that "[w]here a court needs to define an undefined term, it may consult definitions in statutes, regulations[,] or the dictionary for guidance, although such definitions are not controlling." *Adams Outdoor Advert., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 484 (Pa. Cmwlth. 2006).

We first look to the provisions of the statute that are at issue. Section 201(pp) defines BME, in relevant part, as follows:

9

**"Building machinery and equipment."** Generation equipment, storage equipment, conditioning equipment, distribution equipment and termination equipment, which shall be limited to the following:

. . . .

(6) **control system** limited to energy management, **traffic** and parking lot and building access;

. . . .

The term **shall include** boilers, chillers, air cleaners, humidifiers, fans, switchgear, pumps, telephones, speakers, horns, motion detectors, dampers, actuators, grills, registers, **traffic signals**, sensors, card access devices, guardrails, medical devices, floor troughs and grates and laundry equipment, together with integral coverings and enclosures, whether or not the item constitutes a fixture or is otherwise affixed to the real estate, whether or not damage would be done to the item or its surroundings upon removal or whether or not the item is physically located within a real estate structure. The term "[BME]" shall not include guardrail posts, pipes, fittings, pipe supports and hangers, valves, underground tanks, wire, conduit, receptacle and junction boxes, insulation, ductwork and coverings thereof.

72 P.S. § 7201(pp) (first emphasis in original). Section 201(qq) defines "real estate structure," in relevant part, as follows:

**"Real estate structure."** A structure or item purchased by a construction contractor pursuant to a construction contract with:

. . . .

(3) the Commonwealth, its instrumentalities or political subdivisions.

The term includes [**BME**]; developed or undeveloped land; streets; roads; highways; parking lots; stadiums and stadium seating; recreational courts; sidewalks; foundations; **structural supports**; walls; floors; ceilings; roofs; doors; canopies; millwork; elevators; windows and external window coverings; outdoor advertising boards or signs; airport runways; bridges; dams; dikes; **traffic control devices**, including traffic signs; satellite dishes; antennas; guardrail posts; pipes;

fittings; pipe supports and hangers; valves; underground tanks; wire; conduit; receptacle and junction boxes; insulation; ductwork and coverings thereof; and any structure or item similar to any of the foregoing, whether or not the structure or item constitutes a fixture or is affixed to the real estate, or whether or not damage would be done to the structure or item or its surroundings upon removal.

72 P.S. § 7201(qq) (first emphasis in original). Construction contractors are required to pay a use tax for the purchase or use of "real estate structure." Section 32.23(b) of the Department's Regulations, 61 Pa. Code § 32.23(b). However, construction contractors are not required to pay a use tax for BME that is transferred to the Commonwealth or its political subdivisions. Section 204(57)(ii) of the Code, 72 P.S. § 7204(57)(ii) (Section 204(57)).

In determining that the Traffic Signal Related Purchases were within the meaning of "traffic signals" in *Kuharchik I*, we explained:

The Code does not define the term "traffic signals." In the absence of a definition, pursuant to the rules of statutory construction, we construe the term "traffic signals" according to its common usage. 1 Pa.C.S. § 1903(a). "[T]raffic signal" is defined as "a **signal** (such as a **traffic light**) for **controlling traffic**." *Traffic Signal*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/traffic%20 signal (last visited July 14, 2020) (emphasis added). "Signal" is defined as "something (such as a sound, gesture, or object) that **conveys notice or warning**" or "**an object used to transmit** or convey **information beyond the range of human voice**." *Signal*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/signal (last visited July 14, 2020) (emphasis added). Thus, a traffic signal is an object used to transmit information, such as a notice or warning, to control traffic.

The sample traffic signal plan provided by Petitioner shows two traffic signal heads connected to a mast arm, which is connected to a traffic signal pole, which in turn is anchored with a pedestal base. (Stip. Ex. H at 64.) Based upon the sample [traffic signal] plan, it is clear that the Traffic Signal Related Purchases are required to elevate a traffic signal head above traffic when a traffic signal apparatus is built pursuant to

11

this plan because, without the Traffic Signal Related Purchases, the traffic signal head could not operate to control traffic. Therefore, because a traffic signal head, containing the green, yellow, and red lights, by itself cannot transmit signals to control traffic without it being elevated over or near a roadway, more than merely the traffic signal head constitutes the "traffic signal." *See Traffic Signal*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/traffic%20signal (last visited July 14, 2020). Accordingly, poles, mast arms, and pedestal bases, in this case the Traffic Signal Related Purchases, are encompassed within the term "traffic signals," when a traffic signal is built using a pole with mast arms because those items are required to support a traffic signal head for purposes of controlling traffic.

*Kuharchik I*, 236 A.3d at 132 (emphasis in original). Given this determination as to the commonly used meaning of "traffic signals," we rejected the Commonwealth's argument that Petitioner was required "to classify the Traffic Signal Related Purchases into one of the five categories of equipment constituting BME[.]" *Id.* at 133. Rather, we explained that

the Traffic Signal Related Purchases are included within the term "traffic signals," which is specifically included within the definition of BME. Thus, it is not necessary for Petitioner to first establish the Traffic Signal Related Purchases fall into one of the five categories of equipment included within BME because "traffic signals" are specifically included in the definition of BME.

*Id.*

We do not find the Commonwealth's argument persuasive with respect to any alleged error in our employing an analysis that looks to the independent, common usages of the words that comprise a term at issue in order to determine the meaning of the term as a whole and then considers that meaning in light of other relevant evidence. While the Commonwealth asserts in its Reply Brief that it is not challenging the "splicing" of the definitions of "traffic signal" and "signal" together,

(Commonwealth's Reply Br. at 10), its argument in its principal Brief suggests otherwise. Our Supreme Court engaged in a similar statutory interpretation analysis in *A Special Touch v. Department of Labor and Industry, Office of Unemployment Compensation Tax Services*, 228 A.3d 489, 503 (Pa. 2020). There, the Supreme Court analyzed the term "customarily engaged" as it is used in Subsection 4(*l*)(2)(B) of the Unemployment Compensation Law, 43 P.S. § 753(*l*)(2)(B).[4] The Supreme Court looked to the individual dictionary definitions of "customarily" and "engage," determining the words, respectively, to mean "usually, habitually, according to the customs; general practice or usual order of things; regularly" and "[t]o employ or involve one's self; to take part in; to embark on." *A Special Touch*, 228 A.3d at 503 (quoting Black's Law Dictionary 385, 528 (6th ed. 1990)). With the individual definitions of these words in mind, the Court then determined that the phrase "'customarily engaged' requires an individual to be 'usually,' 'habitually,' or 'regularly' 'employed' or 'involved' in activity; or 'employed' or 'involved' in activity 'according to the customs,' 'general practice,' or 'usual order of things.'" *Id.*

Thus, this type of statutory construction analysis is not uncommon or improper. As Petitioner argues, this Court's analysis complied with the rules of statutory construction by construing the term "traffic signal" "according to [its] common and approved usage[,]" 1 Pa.C.S. §§ 1903(a), 1921(a); *Walker*, 842 A.2d at 400, because "the words of the statute are not explicit" in defining that term, 1 Pa.C.S. § 1921(c).

However, the Commonwealth also asserts that the Court erred by then expanding the definition of "traffic signals" to include other undefined terms such

---

[4] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 753(*l*)(2)(B).

13

as a signal head and other related items that are functionally required and "re-engraft[ing]" other statutory language onto that definition. (Commonwealth's Br. at 4.) For clarification, the Court's statutory construction analysis as to the meaning of "traffic signals" culminated with our determination that "a traffic signal is an object used to transmit information, such as a notice or warning, to control traffic." *Kuharchik I*, 236 A.3d at 132. We then considered that definition in light of other evidence of record, specifically, the sample traffic signal plan and the DOT's Handbook provided by the parties as part of the Stipulation. These support our conclusion that the Traffic Signal Related Purchases function together as a traffic signal under the above definition, because the sample traffic signal plan showed the Traffic Signal Related Purchases were necessary for the traffic signal, including the traffic signal head, to "transmit information . . . to control traffic." *Id.* We discern no error with this analysis. Further, the Commonwealth has provided no authority for its contention that it was improper to consider the sample traffic signal plan or the DOT's Handbook as supporting the meaning of "traffic signal."

In addition, as it pertains to our statutory construction analysis, the Commonwealth asserts that the BME definition is unambiguous and that our analysis was in error because we failed to state whether we were interpreting a nontechnical term or a technical term under Section 1903(a) of the Statutory Construction Act. Alternatively, if the Court determined that the term is ambiguous, the Commonwealth argues that the Court failed to apply the requisite factors and presumptions to interpret ambiguous terms and consider legislative intent in determining its meaning. Under either approach, the Commonwealth maintains that our definition was in error. We disagree.

14

The Supreme Court recently addressed a similar situation in *United Blower, Inc. v. Lycoming County Water and Sewer Authority*, __ A.3d __, __ (Pa., No. 3 MAP 2021, filed September 22, 2021). There, the Supreme Court examined the term "cost" as provided in the definition of "steel products" in Section 6 of the Steel Products Procurement Act (Steel Act),[5] 73 P.S. § 1886. Applying the rules of statutory construction, the Court explained that while "[t]he Steel Act offers no definition of the word 'cost,' . . . it is a word with a 'common and approved usage.'" *Id.* at __, slip op. at 12. Rejecting arguments that the term "cost" was a term with technical or peculiar meaning, the Court explained that such arguments did "not render the word ambiguous." *Id.* As such, the Court construed the term in accordance with its common and approved usage and looked to dictionary definitions of the term. This is precisely what this Court did in *Kuharchik I.* As Petitioner argues, we did not opine as to whether the term was ambiguous, as it was not necessary in order to determine the term's meaning. Rather, because Section 201(pp) did not define "traffic signals," we construed the term "according to [its] common and approved usage[.]" 1 Pa.C.S. § 1903(a). Accordingly, we discern no basis for finding that this Court's analysis failed to comply with the rules of statutory construction.

The Commonwealth also argues that our analysis was inconsistent with prior precedent, specifically *East Coast Vapor*, 189 A.3d at 504; *Green Acres*, 163 A.3d at 1147; *Strongstown*, 152 A.3d at 360; and *Kinsley Construction*, 894 A.2d at 832. (Exceptions ¶ 4; Commonwealth's Br. at 16-17.) The Commonwealth raised similar arguments in *Kuharchik I,* also citing *Green Acres*, *Kinsley Construction*, and *Strongstown*.

---

[5] Act of March 3, 1978, P.L. 6, *as amended*, 73 P.S. §§ 1881-1889.

15

In *Kuharchik I*, we discussed these cases in turn as follows:

[I]n *Green Acres*, this Court was presented with a similar issue where we were required to interpret the scope of an undefined term included within the definition of BME. Specifically, in *Green Acres*, we examined "the scope of the term 'guardrails' as used in the definition of tax exempt" BME. 163 A.3d at 1148. The taxpayer in *Green Acres* argued "that the term 'guardrails,'" as used in the definition of BME, "refers to the entire guardrail system, with the exception of guardrail posts, which are specifically excluded." *Id.* As such, the taxpayer concluded, the "nuts, bolts, washers, and guardrail blocks, which are necessary for the construction of the guardrails, constitute tax exempt BME." *Id.* We agreed, concluding that the term "guardrails" includes "the nuts, bolts, washers, and guardrail blocks . . . utilized to connect the elements of the guardrail system." *Id.* at 1152. Noting that federal and state transportation publications use the term "guardrail" to refer to more than just the railing itself, we reasoned that the dictionary definition and common usage of the term "guardrails" "includes the entire guardrail system." *Id.* at 1151 (emphasis omitted). We further reasoned that the fact "[t]hat only the 'guardrail posts' are carved out as taxable explains the Legislature's decision" not to specifically list the tax status of all of the components of a guardrail system. *Id.* at 1152. Accordingly, we concluded that since the definition of BME only excluded guardrail posts, the other components of a guardrail system "fall within the definition of 'guardrails,' and are therefore exempt from use tax as BME." *Id.*

The Commonwealth contends that *Green Acres* is distinguishable from the present matter because none of the Traffic Signal Related Purchases are included in the per se list of items included within the definition of BME. Instead, the Commonwealth contends this case is similar to *Kinsley Construction*. However, *Kinsley Construction* is distinguishable from the present case. In *Kinsley Construction*, we examined, among other things, whether sound barriers and I-beams constitute BME. We concluded that sound barriers and I-beams are not BME, reasoning that "had the [L]egislature intended sound barriers," which includes I-beams that hold the sound barriers in place, "to be considered [BME], [it] would have [] included [these items] in the lengthy definition" of BME. *Kinsley Constr*[.], 894 A.2d at 836. After *Kinsley Construction*, we decided *Strongstown . . .*, 152 A.3d [at] 360[]. In that case we examined, among other things, whether traffic signs were included within the definition of BME. Citing *Kinsley*

16

*Construction*, we concluded that traffic signs did not constitute BME, reasoning that "the Legislature did not specifically list 'traffic signs' as they did 'traffic signals.'" *Strongstown* . . . , 152 A.3d at 368. Unlike in *Kinsley Construction* and *Strongstown* . . . , the question here is not whether the Traffic Signal Related Purchases are expressly included within the Code's definition of BME but whether the term "traffic signals," which **is** expressly included within the definition of BME, encompasses the Traffic Signal Related Purchases. Therefore, the present matter is similar to *Green Acres* in that we must interpret the scope of an undefined term specifically listed in the per se list of items that are BME.

*Kuharchik I*, 236 A.3d at 133-34 (emphasis in original). After reviewing our analysis and those in *Green Acres*, *Kinsley Construction*, and *Strongstown*, we discern no error or inconsistency that would require reversal. Indeed, just as we determined that the nuts, bolts, washers, and guardrail blocks were comprised within the definition of "guardrails" after determining the common usage of that undefined term in *Green Acres*, 163 A.3d at 1152, we determined in *Kuharchik I* that the Traffic Signal Related Purchases are within the commonly used meaning of "traffic signals." This is distinguishable from our analysis in *Strongstown*, though we did there engage in a similar statutory construction analysis in determining the meaning of the word "system" as it pertains to a "control system" for traffic. However, we determined in *Strongstown* that the record did not provide any support that road signs fell under that meaning. *Strongstown*, 152 A.3d at 368. Conversely, we concluded in *Kuharchik I* that the record did support that the Traffic Signal Related Purchases were within the meaning of "traffic signals" considering its common usage and the sample traffic signal plan and the DOT's Handbook. Such an analysis is even more distinguishable from that in *Kinsley Construction*, as we did not there need to engage in any statutory construction analysis to determine the common usage of an undefined term; rather, because sound barriers and I-beams did not fall under **any** of

17

the enumerated inclusions to the BME definition, we concluded that the items were not BME. *Kinsley Construction*, 894 A.2d at 836. Accordingly, *Kuharchik I* is not inconsistent with these cases.

The Commonwealth also argues that our analysis in *Kuharchik I* employed an approach similar to one we rejected in *East Coast Vapor*. We disagree. In *East Coast Vapor*, the Department contended that the component parts, including replacement coils, regulated mods, and tanks, that are packaged and sold separately from the electronic cigarettes at issue, were "integral" parts that should be considered to be comprised in the statutory definition of "electronic cigarettes," 189 A.3d at 517-18. The statute at issue defined "electronic cigarette" as:

> (1) An electronic oral device, such as one composed of a heating element and battery or electronic circuit, or both, which provides a vapor of nicotine or any other substance and the use or inhalation of which simulates smoking.
>
> (2) The term includes:
>
>> (i) A device as described in paragraph (1), notwithstanding whether the device is manufactured, distributed, marketed or sold as an e-cigarette, e-cigar and e-pipe or under any other product, name or description.
>>
>> (ii) A liquid or substance placed in or sold for use in an electronic cigarette.

Section 1201-A of the Tobacco Products Tax Act, 72 P.S. § 8201-A.[6] In that case, the Court examined the taxability of items that were not purchased with the taxable item, were not physically connected to the taxable item, and were not inherently part of the statutory definition of the taxable item.

---

[6] Section 1201-A of the Tobacco Products Tax Act was added by Section 18 of the Act of July 13, 2016, P.L. 526, 72 P.S. § 8201-A.

18

On the other hand, this Court in *Kuharchik I* considered the taxability of the Traffic Signal Related Purchases, items that were purchased with the taxable item, the traffic signal head, and were physically connected to the traffic signal head. In *Kuharchik I*, rather than considering whether the Traffic Signal Related Purchases were "integral" to a "traffic signal," we engaged in a statutory construction analysis to determine the ordinary meaning of the term "traffic signal" because the Code does not provide a definition. Accordingly, we disagree with the Commonwealth that *Kuharchik I* is inconsistent with *East Coast Vapor*.

Finally, we address the Commonwealth's assertion that *Kuharchik I* determined that the term "traffic signals" included "conduit, receptacle, and junction boxes[.]" (Exceptions ¶ 1.) After explaining our interpretation as to the common usage of "traffic signals" and determining that the Traffic Signal Related Purchases fell within that definition "because those items are required to support a traffic signal head for the purposes of controlling traffic[,]" we stated: "With that being said, any conduit, receptacle, and junction boxes, which **may be included within the term traffic signal, are subject to the Commonwealth's use tax because these items are specifically excluded from the definition of BME**." *Kuharchik I*, 236 A.3d at 132-33 (emphasis added). Accordingly, we disagree with the Commonwealth that *Kuharchik I* determined that the meaning of "traffic signals" comprised these items.

In sum, the Commonwealth has not shown any basis for overturning *Kuharchik I* on the basis of any allegedly improper statutory construction analysis or that analysis being inconsistent with this Court's precedent, and we deny these Exceptions.

19

*B. Whether this Court treated BME as exclusions rather than exemptions to the use tax and our required exclusivity between the Code's definitions.*

1. Parties' Arguments

The Commonwealth argues that *Kuharchik I* "improperly modified the holding of *Crawford* . . . to essentially convert the BME exemption into an exclusion." (Commonwealth's Br. at 15; Exceptions ¶¶ 3, 7.) By "shifting the burden of proof from [Petitioner] (to prove an item qualified under the exemption) to the Commonwealth (to prove an item was excluded from the exemption)[,]" the Commonwealth alleges, this Court erred by not strictly construing the BME definition against the taxpayer. (Commonwealth's Br. at 16.) Further, the Commonwealth also argues that this Court erred in allegedly concluding that the Code "must explicitly indicate two separately defined terms are mutually exclusive" and our alleged shifting of the burden of the proof to require the Commonwealth to demonstrate exclusivity. (Exceptions ¶¶ 2(c), 2(d).) The Commonwealth asserts that this Court was led astray by Petitioner's argument and "wordplay" with regard to the relevant statutory language, which the Commonwealth asserts led to our "erroneous conclusion" that exclusivity is required and that the BME definition must explicitly exclude certain items in order for them to qualify for the exemption. (Commonwealth's Br. at 7-8, 10-12.)

In response, Petitioner asserts that, rather than shifting the burden of proof, this Court "did not force the Commonwealth to prove the [Traffic Signal Related] Purchases were taxable—[the Court] merely interpreted the statute as it is obligated to and determined that [Petitioner] had satisfied its burden of showing that the [Traffic Signal Related] Purchases are subject to an exemption." (Petitioner's Br. at 17.) Petitioner maintains that "construing a statute against the taxpayer does not necessarily mean that the taxpayer's interpretation must always fail." (*Id.*) For these

20

reasons, Petitioners submit that the Court did not improperly shift any burden to the Commonwealth.

In its Reply Brief, the Commonwealth reasserts that the Court "erred by requiring the Commonwealth to prove the [Traffic Signal Related Purchases] were not *exempt*." (Commonwealth's Reply Br. at 11 (emphasis in original).)

2. Analysis

First, we address the Commonwealth's argument regarding our allegedly improper burden shifting. The Commonwealth argues that our opinion modified the holding in *Crawford*, 888 A.2d at 620, by shifting the burden to the Commonwealth to show that an item is taxable. We disagree.

In *Crawford*, this Court recognized that the sales and use tax exemption for construction contractors is limited to BME as set forth in Section 204(57), explaining that statutory provisions that excuse the taxation of items that are normally within the subject of taxation create exemptions that "must be strictly construed against the taxpayer." 888 A.2d at 621. However, we differentiated between an exclusion and an exemption more thoroughly in *Plum Borough School District v. Commonwealth*, 860 A.2d 1155 (Pa. Cmwlth. 2004). There, we explained:

> that the title of Section 204 denominates its contents as "exclusions from tax" and not "exemptions from tax." Exemptions are items which are **within the scope of the general language of the statute imposing the tax**, *Commonwealth v. Sitkin's Junk Company*, 194 A.2d 199 (Pa. 1963), while "exclusions are items which were not intended to be taxed in the first place." *Rossi v. Commonwealth . . .* , 342 A.2d 119, 122 (Pa. Cmwlth. 1975). The legal effect of that distinction is that **exemptions are to be strictly construed against the taxpayer**; exclusions are to be construed against the taxing body. *Equitable Gas Co. v. Commonwealth . . .* , 335 A.2d 892 (Pa. Cmwlth. 1975). However, "[w]hether a taxing provision is an 'exemption' . . . or an 'exclusion' . . . is not controlled by what it is called, but by its language and the effect

21

of that language." *Adelphia House P*[*'*]*ship v. Commonwealth . . .* , 709 A.2d 967, 970 (Pa. Cmwlth. 1998).

*Id.* at 1157 n.4 (emphasis added) (third and fourth alterations in original). Thus, a provision is properly analyzed as an exemption where the Court determines, while strictly construing the provision against the taxpayer, that the item at issue is "within the scope of the general language of the statute imposing the tax[.]" *Id.*

In *Kuharchik I*, we acknowledged that we were required to "be mindful that tax **exemptions are to be strictly construed against taxpayer**, and that the burden is on the taxpayer to prove that the transaction sought to be taxed is either not within the Code or is subject to an exemption[.]" *Kuharchik I*, 236 A.3d at 132 (emphasis in original) (internal quotations and citations omitted). We then engaged in the statutory construction analysis discussed above, concluding that Petitioner met its burden in showing that the Traffic Signal Related Purchases fell "within the scope of the general language" of the term "traffic signals" in the BME definition. *Plum Borough*, 860 A.2d at 1157 n.4. Thus, we did not improperly shift the burden to the Commonwealth but, rather, applied the law to determine that the Traffic Signal Related Purchases were subject to the BME exemption and, therefore, that Petitioner had met its burden. Accordingly, we disagree with the Commonwealth that *Kuharchik I* shifted the burden to it or that we modified the holding in *Crawford*.

Next, we address the Commonwealth's argument that *Kuharchik I* required exclusivity between the Code's definitions of BME and "real estate structure." In our opinion, we stated:

> [T]he Code defines "real estate structure" to include BME, evidencing that an item that is BME can also be considered "real estate structure." *Id.* Additionally, the Code defines "real estate structure" to include "traffic control devices." *Id.* Seeing that traffic control items are used in both the definitions of BME and "real estate structure," it is clear the

22

definitions of BME and "real estate structure" overlap. Further, while the Traffic Signal Related Purchases are support structures in the sense that they support and elevate the traffic signal head, the Traffic Signal Related Purchases, for the foregoing reasons, are included within the term "traffic signal," which is specifically included with the definition of BME. Absent any statutory language indicating that the Traffic Signal Related Purchases cannot be BME simply because they may also fall within the definition "real estate structure," we cannot conclude the Traffic Signal Related Purchases cannot be included in the term "traffic signals."

Additionally, the definition of BME does not specifically exclude the Traffic Signal Related Purchases. If the Legislature did not intend the Traffic Signal Related Purchases to be included within the term "traffic signals," or more importantly within the definition of BME, the Legislature could have included the Traffic Signal Related Purchases in the list of items specifically excluded from the definition of BME as it did conduit, receptacle, and junction boxes.

*Kuharchik I*, 236 A.3d at 135.

After review, we disagree that our holding in *Kuharchik I* required the BME definition to specifically exclude certain items in order for such purchases to not constitute BME or required mutual exclusivity between the Code's definitions. Rather, we concluded that Petitioner's burden to show that the Traffic Signal Related Purchases constitute BME had been met given our determination that the items fell within the commonly used meaning of "traffic signals." We then considered the fact that the Legislature provided for some overlap between the BME and real estate structure definitions and that the Legislature did not specifically exclude the Traffic Signal Related Purchases from the BME definition as factors that support our conclusion. Because we discern no error from this analysis, we will deny these Exceptions.

23

*C. Whether the Court misconstrued the Commonwealth's arguments and discussions and conflated statutory language.*

1. Parties' Arguments

The Commonwealth argues that this Court misunderstood and conflated its arguments and the relevant statutory terms in arriving at our allegedly erroneous conclusion that "traffic signals" included the Traffic Signal Related Purchases. First, the Commonwealth contends that the Court "altered the Commonwealth's argument into a generalized argument about 'support structures' rather than the specific argument which analyzed the statutory language." (Commonwealth's Br. at 5-7; Exceptions ¶ 9.) Because we stated in *Kuharchik I* that the Commonwealth's argument was "that the Traffic Signal Related Purchases are 'support structures'" rather than "structural supports," as listed in the "real estate structure" definition under Section 201(qq), the Commonwealth asserts that the "decision was inconsistent with the statute, incorrect[,] and should be reversed." (Commonwealth's Br. at 5-7.) Further, the Commonwealth avers that our decision "was infected by [Petitioner's] wordplay[]" and evidenced that the Court misconstrued and conflated the terms "traffic signal," "traffic signal head," "traffic control system," "traffic control devices," "traffic control items," "traffic related purchases," and "control systems for traffic." (*Id.* at 8-9; Exceptions ¶ 2(b).) Moreover, the Commonwealth contends that the Court misunderstood its arguments as it pertains to the statutory "real estate structure" definition. (Exceptions ¶¶ 6, 8.) This use of conflated language, the Commonwealth argues, shows that the Court "misconstrued the Commonwealth's argument[,]" which "was not so untethered or imprecise[,]" and "thus unknowingly disregarded the *verbatim* statutory language[.]" (Commonwealth's Br. at 9-10 (emphasis in original).) The Commonwealth contends that this misunderstanding further shows that our alleged

24

requirement for mutual exclusivity between the BME and "real estate structure" definition was in error, as it "effectively renders the subcategories and separate delineation of property" in those definitions "as purely tautological." (*Id.* at 11-12.) Because the Court "appears to have been led astray . . . and reached an erroneous conclusion," the Commonwealth maintains, "its decision should be reversed." (*Id.* at 12.)

Petitioner argues that the Court understood and addressed the Commonwealth's arguments. That our opinion's recitation of the Commonwealth's arguments and discussions of statutory terms was allegedly not "particular enough or fail[ed] to quote extensively enough[,]" Petitioner maintains, is not grounds for reversal. (Petitioner's Br. at 9.) Petitioner asserts that the Commonwealth "point[s] to no authority that says items must be" either BME or "real estate structure" "or any authority that says [the Traffic Signal Related Purchases] must only qualify [as 'real estate structure'] and not BME." (*Id.* at 10.) Because the BME definition contains a per se list of those items that cannot be BME, Petitioner argues that the Code "simply offers a conclusion the Commonwealth disfavors." (*Id.* at 11.) Petitioner asserts that the Commonwealth fails to understand that our decision held that the Traffic Signal Related Purchases "are traffic signals[]" because "they are themselves objects that are used to convey information to control traffic[.]" (*Id.* at 12.)

2. Analysis

We first examine this Court's explanation of the Commonwealth's argument as it related to "structural supports" in *Kuharchik I*:

> As to Petitioner's argument that the Traffic Signal Related Purchases are encompassed within the term "traffic signals," the Commonwealth disagrees. Instead, the Commonwealth suggests that the Traffic Signal Related Purchases are "structural supports," and, therefore, are "real

25

estate structure" not BME. Noting that Section 201(qq) of the Code, 72 P.S. § 7201(qq), defines the term "real estate structure" to include "structural supports," the Commonwealth asserts that the Traffic Signal Related Purchases cannot be BME because they are included within the term "real estate structure." With respect to legislative intent, the Commonwealth contends that "it is clear the [L]egislature did not intend for structural supports to qualify for the BME exemption" since structural supports fall within the "real estate structure" exception to the use tax, which Petitioner does not qualify for as a construction contractor.[] (Commonwealth's [Principal] Br. at 14.)

*Kuharchik I*, 236 A.3d at 129 (footnote omitted) (alterations in original). While we later referred to the term "support structures" in the analysis section of our opinion, the above excerpt shows that this Court understood the Commonwealth's argument to be in regard to the specific statutory term "structural supports."

Looking to our alleged conflation of the terms concerning traffic and traffic control, the Commonwealth focuses on the following passage:

[T]he Code defines "real estate structure" to include BME, evidencing that an item that is BME can also be considered "real estate structure." [72 P.S. § 7201(qq)]. Additionally, the Code defines "real estate structure" to include "**traffic control devices**." *Id.* Seeing that **traffic control items** are used in both the definitions of BME and "real estate structure," it is clear the definitions of BME and "real estate structure" overlap. Further, while the Traffic Signal Related Purchases are support structures in the sense that they support and elevate the **traffic signal head**, the Traffic Signal Related Purchases, for the foregoing reasons, are included within the term "**traffic signal**," which is specifically included with the definition of BME.

*Kuharchik I*, 236 A.3d at 134 (alterations and emphasis added).

The Commonwealth argues that our use of these terms demonstrates that the Court disregarded statutory language. We disagree. Rather, our review of the use of these terms shows that we considered the entirety of both Section 201(pp) and (qq) in order to draw inferences from the overlap between the items that qualify as

26

BME and "real estate structure." Indeed, we agree with Petitioner that these Exceptions demonstrate that the Commonwealth has misinterpreted our statutory construction analysis as relying on the lack of exclusivity between these sections of the statute as the reason for determining that the Traffic Signal Related Purchases were within the common meaning of "traffic signals." For the reasons previously discussed, we see no error in our statutory construction analysis. Moreover, the Commonwealth's argument that our holding renders the subcategories and delineation of taxable and nontaxable items tautological because we required exclusivity between the statutes is based on a mistaken premise—that the holding requires any such exclusivity. Given that our decision provided no such holding, as discussed above, the Commonwealth's argument is without merit.

Accordingly, we disagree with the Commonwealth that we misunderstood its argument or that we conflated statutory terms and deny these Exceptions.

### D. Whether this Court's factual findings were inconsistent with, unsupported by, or contradictory to the Stipulation.

#### 1. Parties' Arguments

The Commonwealth takes Exceptions to the Court's following factual findings in *Kuharchik I*: (1) that Petitioner purchased items similar to the Traffic Signal Related Purchases "during the period of the [p]rior [a]udit," (Exceptions ¶ 5(a)); (2) "[t]hat Petitioner suggested to the Auditor that the [Traffic Signal Related Purchases] were not taxable because they qualified as BME[,]" (*id.* ¶ 5(b)); (3) that the BOA determined that the Traffic Signal Related Purchases were not BME but fell under the definition of "real estate structure," which did not apply to Petitioner as a construction contractor, (*id.* ¶ 5(c)); (4) that the record lacks any prior Department interpretation as to the meaning of "traffic signals," (*id.* ¶ 5(d)); (5) that

27

the Commonwealth did not argue that the Department's interpretations were to be afforded deference, (*id.* ¶ 5(e)); (6) that Exhibit H to the Stipulation shows that the Traffic Signal Related Purchases are necessary for a traffic signal to function or is a "sample traffic signal plan" (*id.* ¶ 5(f), (g)); and (7) "[t]hat the Traffic Signal Related Purchases" are necessary "to elevate a traffic signal head above traffic[,]" (*id.* ¶ 5(h)).

In its brief, the Commonwealth argues first that our recitation of the BOA's and Board's decisions was inconsistent with the Stipulation. (Commonwealth's Br. at 7, 8 n.8 (citing *Kuharchik I*, 236 A.3d at 126).) With respect to prior Department interpretations of the term "traffic signals," the Commonwealth maintains that our statement in *Kuharchik I* that "'the record discloses no regulations, informal agency interpretations, policy statements[,] or other indication[] of the Department's interpretation of 'traffic signals' prior to this case[]' . . . is not accurate." (*Id.* at 12 (quoting *Kuharchik I*, 236 A.3d at 132).) The Commonwealth argues that "[t]he record contains ample documentation demonstrating prior interpretations of the BME definition, generally, and the poles at issue here[.]" (*Id.* (citing Stip. at 789-851).) The Commonwealth contends that these interpretations show that the Department considers the Traffic Signal Related Purchases to be taxable, non-BME items. (*Id.* at 12 n.17 & n.18.) Finally, the Commonwealth argues that its principal brief contained an argument for deference to these Department interpretations and that our statement in *Kuharchik I* to the contrary was in error. (*Id.* at 13.) As to the remaining Exceptions to our alleged factual mistakes in *Kuharchik I*, the Commonwealth does not address or develop these arguments in its briefs.

With regard to deference to the Department's prior interpretations, Petitioner argues that, contrary to the Commonwealth's position, the Commonwealth "d[id]

28

not state in its brief below that it is entitled to such deference in the instant action." (Petitioner's Br. at 12-13.) Rather, Petitioner maintains that "the Commonwealth never plainly stated that it is entitled to deference" and that "[t]he Commonwealth can point to no regulations, interpretations, or policy statements that would entitle it to deference." (*Id.* at 13.)

## 2. Analysis

Starting first with the Commonwealth's Exception to our recitation of the BOA's and Board's decisions in this matter, we stated the following in *Kuharchik I*:

> The Board reduced the use tax deficiency . . . but denied Petitioner any relief with respect to the Contested Items. ([Stip.] Ex. F.) The Board found that Petitioner had not met its burden of demonstrating that the [Traffic Signal Related Purchases] fell within the definition of BME. (*Id.* Ex. F at 7.) Further, the Board agreed with the [BOA's] conclusion that the [Traffic Signal Related Purchases] instead fell within the real estate structure exception to the use tax, which does not apply to Petitioner "since property used by construction contractors . . . for or on behalf of the Commonwealth or its political subdivisions[] is subject to tax." (*Id.* (quoting Section 32.23(b) of [the] Department's regulations, 61 Pa. Code § 32.23(b)).)

*Kuharchik I*, 236 A.3d at 126-27 (sixth alteration in original). In its decision, the BOA stated that the "traffic signs along with other types of signage including the mast arms, poles, pole bases, anchor bolts and the like would represent real estate structure if [] Petitioner's contract was with an exempt entity[]" but that the exemption was not available because the items were purchased pursuant to a construction contract. (Stip. Ex. D at 2.) Therefore, it appears that the BOA did determine that the Traffic Signal Related Purchases fell within the real estate structure exception. Looking to the Board's decision, it stated that "Petitioner ha[d] failed to demonstrate that the purchases of the poles (anchor-bolted) with mast arms

29

. . . constitute exempt traffic control systems equipment within the term [BME] as defined in Section 201(pp)[.]" (Stip. Ex. F at 7.) The Board added that the "traffic signs fall within the term 'real estate structure'" under Section 201(qq). (*Id.*) Thus, it appears that it was incorrect to state that "the Board agreed with the [BOA's] conclusion that the [Traffic Signal Related Purchases] fell within the real estate structure exception to the use tax[,]" as the Board only explicitly held as much with regard to traffic signs. *Kuharchik I*, 236 A.3d at 126.

Nonetheless, the Commonwealth has not explained how this factual inconsistency in our recitation of the Board's decision justifies reversal in this case. Beyond a passing reference to this recitation in its brief, (Commonwealth's Br. at 7-8 n.8), the Commonwealth does not develop any argument as to how this Exception would require us to reverse our holding. Given that this Court did not rely on the Board's or BOA's determinations but instead engaged in its own *de novo* review[7] to determine the common usage of the term "traffic signals" and whether the Traffic Signal Related Purchases fell within that meaning, and absent any argument developing how this inconsistency impacted our legal determination, we disagree with the Commonwealth that this factual inconsistency mandates reversing our decision.

Next, we turn to the Commonwealth's Exceptions surrounding the Department's prior interpretations of the term "traffic signals." In *Kuharchik I*, we stated that "the record discloses no regulations, informal agency interpretations, policy statements, or other indication of Department's interpretation of 'traffic

---

[7] In *Kuharchik I*, we explained that when reviewing determinations of the Board, "this Court essentially acts as a trial court and exercises the broadest scope of review. Our standard of review is *de novo*. The stipulation of facts entered into by the parties is binding on them, although the Court may draw its own legal conclusions." *Kuharchik I*, 236 A.3d at 127 n.2 (quoting *Luther P. Miller, Inc. v. Commonwealth*, 88 A.3d 304, 308 n.5 (Pa. Cmwlth. 2014)).

signals' prior to this case, nor does the Commonwealth argue that its interpretation here should be given deference." 236 A.3d at 132. The Commonwealth points to the Stipulation, arguing that it contains ample examples of the Commonwealth's interpretation. (Commonwealth's Br. at 12 (citing Stip. at 789-851).) After reviewing these cited pages of the Stipulation and the other exhibits attached thereto, the Court has not found any Department interpretation as to "traffic signals." While there are ample interpretations as to the taxability of other items such as "Power Poles," "Fabricated metal supports for fixtures and equipment," "Misc clips, angles[,] and metal," "Support Steel," and "Structural Steel, Joints," (Commonwealth's Br. at 12 n.17), the cited parts of the Stipulation contain no interpretation as to "traffic signals."

To this point, the Commonwealth also argues that we erred in stating that the Commonwealth did not argue that we were to give deference to the Department's interpretation as to "traffic signals." In its principal brief on the merits filed prior to our deciding *Kuharchik I*, however, the Commonwealth did not point to any specific interpretation or specifically argue that this interpretation is to be given deference. Rather, the Commonwealth summarily stated that "[c]ourts give deference to interpretations of statutes by administrative agencies possessing special or expert knowledge in complex areas of law like taxation." (Commonwealth's Principal Br. at 12-13 (citations omitted).) The Commonwealth did not explain to which Department interpretation this Court was to afford deference. Moreover, as discussed above, given that our review of the Stipulation shows that there is no such Department interpretation as to the taxability of "traffic signals," this argument is not persuasive.

31

As to the remaining Exceptions to our decision's alleged factual inconsistencies, the Commonwealth does not address these Exceptions in its brief or explain how the challenged factual statements are inaccurate or contradict the Stipulation, much less how they would justify reversal even if so. Moreover, issues raised but not developed in an appellate brief are waived. *See Singer v. Bureau of Pro. & Occupational Affs., State Bd. of Psychology*, 633 A.2d 246, 248 (Pa. Cmwlth. 1993); *see also* Rule 2119(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 2119(a) (requiring that the argument section of a brief be "be divided into as many parts as there are questions to be argued[]" and "followed by such discussion and citation of authorities as are deemed pertinent[]"). Accordingly, we deny these Exceptions.

## III.   CONCLUSION

For the foregoing reasons, we discern no error in our prior decision, and, therefore, we overrule the Commonwealth's Exceptions to *Kuharchik I*.

 

_____
**RENÉE COHN JUBELIRER,** Judge

 

Judge Fizzano Cannon did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kuharchik Construction, Inc.,      :
                 Petitioner      :
                                     :
            v.                   :     No.  486 F.R. 2015
                                     :
Commonwealth of Pennsylvania,      :
                 Respondent      :

## O R D E R

**NOW**, October 14, 2021, the Exceptions filed by the Commonwealth of Pennsylvania are **OVERRULED**.  This matter is remanded to the Board of Finance and Revenue to reduce the use taxes assessed against Kuharchik Construction, Inc. for the period of January 1, 2011, through January 31, 2014, in accordance with the foregoing opinion and the parties' Joint Stipulations of Fact filed with this Court.

Jurisdiction relinquished.

 

_____
**RENÉE COHN JUBELIRER,** Judge